UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARMEL & CARMEL, PC, | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| v. | ) | Case No. 11-cv-158 (RMC) |
| CLARITY LTD., | ) | |
| Defendant/Counterclaimant, | ) | |
| and | ) | |
| DELLIS CONSTRUCTION LTD., | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Carmel & Carmel, PC, a law firm, acted as Escrow Agent for Clarity, Ltd., Purchaser, and Dellis Construction Ltd., Contractor, holding monies for payment on Dellis's construction of a resort villa in the Turks & Caicos Islands. Clarity and Dellis were signatories to the relevant escrow agreement. Dellis is now under the control of an Official Liquidator, Stephen Katz, who has been appointed by the court in Turks & Caicos to wind up Dellis's affairs. Litigation by other disappointed purchasers has been transferred from New York to the liquidation proceeding in Turks & Caicos.

In the meantime, Clarity demanded that Carmel release to it the escrowed funds in whole. Carmel sought Dellis's agreement, which, to date, has been neither granted nor denied.

Asserting uncertainty as to what to do, Carmel filed this interpleader action and deposited the funds with the Court. Clarity filed a counterclaim, alleging conversion and breach of the escrow agreement on the basis of willful default and gross negligence by Carmel. Dellis recently filed an answer, taking the position that the Official Liquidator does not know enough yet to ascertain whether Dellis might have any claim to the escrowed funds and that he cannot therefore release any claim. Carmel has filed a motion to dismiss Clarity's counterclaim, which is briefed and pending before the Court. At an initial scheduling conference in open court, the Court queried the parties about the expense and goals of this litigation. This Memorandum Opinion tracks that conversation and is entered to reflect the Court's findings and conclusions.[1] Carmel's motion to dismiss Clarity's counterclaims, which the Court treats a motion for summary judgment, will be granted.

## I. FACTS

Carmel & Carmel is a law firm organized and existing under the laws of the District of Columbia.[2] Defendants are both limited liability entities organized under the Turks & Caicos Island Companies Ordinance. Dellis is an affiliate of Turks, Ltd. another Turks & Caicos company.

On or about July 11, 2007, in conjunction with its representation of Turks, Ltd., Carmel filed a registration for The Strata Corporation for Dellis Cay Hotel and Beach House

---

[1] The parties plan to confer concerning legal fees incurred by Carmel and may resolve the firm's demand for such payment from one or both defendants. The Court incorporates the discussion and parties' agreements in open court into this Memorandum Opinion. *See* Transcript of Hearing on November 18, 2011.

[2] Unless otherwise noted, the facts are not contested.

Residences ("Dellis Cay") with the New York Department of Law's Real Estate Financing Bureau. As part of the regulation requirements, an escrow agreement was established. *See* Compl., Ex. 1.

Thereafter, Robert and Lynne Grossman, beneficial owners of Clarity, delivered to Carmel $1,428,570 that was placed in escrow at the Wachovia Bank NA in Washington, D.C., in connection with the purchase of a condominium unit at Dellis Cay. Later, Clarity (as purchaser), Turks (as vendor), and Dellis (as contractor) entered into a new purchase agreement for an "overwater" villa in Dellis Cay. This was a complicated transaction involving a yacht owned by the Grossmans as well as the real estate in Turks & Caicos. As part of the transaction and at the joint request of both the Grossmans and Turks, Carmel returned the majority of the Grossmans' original deposit to them. Carmel transferred the remaining funds – $476,190 – to Northern Trust in New York, and Clarity, Carmel, and Dellis signed a second escrow agreement (the "Escrow Agreement" or "Agreement") covering these funds. It is these funds and the corresponding Escrow Agreement that are presently in dispute. As of January 24, 2011, when the Complaint was filed, the amount of funds held in escrow (the "Escrow Amount") equaled approximately $476,982.45, with interest accruing. The Escrow Agreement provides that:

> 1. [Carmel] will deliver the Escrow Amount to [Clarity], [Dellis] or both . . . upon the following conditions:
>
>     (a)   To [Dellis] on the Completion Date; or
>
>     . . .
>
>     (c)   To [Clarity], upon receipt of written demand therefor, stating (y) that the Construction Agreement has, as a result of [Dellis's] default . . . been terminated and [Clarity] is entitled to the return of the entire Escrow Amount and (z) the facts and circumstances underlying such default;

provided, however, that [Carmel] shall not honor such demand until more than ten (10) days after [Carmel] has served a copy of such demand to [Dellis] . . . nor thereafter if [Carmel] shall have received written notice of objection from [Dellis] in accordance with the provisions of paragraph 2 of this Escrow Agreement.

2.  Upon [Carmel's] receipt of a written demand for all or any portion of the Escrow Amount by [Clarity] or [Dellis] . . . [Carmel] shall promptly serve a copy thereof on the other party.  The other party shall have the right to object to the delivery of the Escrow Amount . . . by sending written notice of such objection to [Carmel within ten days] . . . .

3.  In the event [Carmel] shall have received the notice of objection provided for in paragraph 2 . . . within the time therein prescribed, [Carmel] shall continue to hold the Escrow Amount until (i) [Carmel] receives written notice from [Dellis] and [Clarity] directing the disbursement of the Escrow Amount . . . or (ii) in the event of litigation between [Dellis] and [Clarity], [Carmel] shall deposit the Escrow Amount with the Clerk of the Court in which said litigation is pending or (iii) [Carmel] shall take such affirmative steps as [Carmel] may, at [Carmel's] option elect . . . including . . . an action for interpleader . . . .

Compl., Ex. 2.  The Agreement also provides that Carmel shall not be liable for errors in the performance of its duties as the escrow agent "except for [Carmel's] own willful default and gross negligence."  *Id*. ¶ 4.

Not long after the parties executed the Escrow Agreement, Dellis collapsed and ceased work on Dellis Cay.  On or about January 8, 2010, Clarity served upon Dellis and Carmel a written Notice of Termination of Construction Agreement which, among other things, demanded return of the Escrow Amount.

In an email dated January 18, 2010, Timothy O'Sullivan, Clarity's attorney in the Turks & Caicos, advised Carmel that, " . . . for the moment I am proceeding on the basis of getting the contracting parties [Dellis and Clarity] to jointly instruct you to release escrowed fund

[sic] upon the termination of agreements – by mutual consent.  I should have these to you on the . . . Grossman/clarity [sic] deal tomorrow." Carmel Mot. to Dismiss Counterclaims ("Mot. to Dismiss") [Dkt. # 9] Ex. 2 at 32[3].  Mr. O'Sullivan's comments were part of an email chain in which he informally provided information to Frank J. Carmel concerning "the liquidation of Dellis Construction Ltd. and the receivership of Turks, Ltd." *Id.* at 33-34.  By this latter email, Mr. O'Sullivan identified the "provisional liquidator of [Dellis Construction Ltd.]" as "Mr. Katz." *Id.*  *See also* Complaint ¶ 13 ("Plaintiff has been informed that on February 13, 2009, by Order of the Turks & Caicos Supreme Court, Stephen Katz was appointed as the Provisional Liquidator, and that on August 13, 2010, by Order of the Turks & Caicos Supreme Court, Stephen Katz was appointed as the Official Liquidator" for Dellis.).

In fact, by email dated January 14, 2010, Stephen Katz, a partner at David Rubin & Partners LLP in London and Provisional Liquidator for Dellis, had already advised Mr. O'Sullivan:

> I can confirm formally receipt of the notice of termination served by you on behalf of your client Clarity Limited dated 8 January 2010 and can further confirm my agreement and acceptance of the termination on behalf of [Dellis Construction Ltd.]
>
> In connection with your request to give instructions to the escrow agents I note that the escrow agreement contains a specific mechanism for dealing with the funds on termination.  Unfortunately, and as you are no doubt aware, I am not in funds to warrant taking legal advice in this matter in New York where the agreement is written and therefore will leave it to the escrow agents to deal with any return of funds pursuant to the terms of the agreement.  Of course your client accepted these terms when signing the contracts.

---

[3] Carmel filed more than 150 pages of exhibits attached to its motion to dismiss.  The pages of the exhibits are numbered sequentially after the brief by the Court's electronic filing system, which pagination the Court adopts for identification.  References are to "Ex." and the page number in the upper right corner.

Mot. to Dismiss, Ex. 3 at 40.  There is no indication that this email was sent to Carmel at that time.

On May 8, 2010, Mr. O'Sullivan, sent an email to Carmel, forwarding a second copy of the January 8, 2010 Clarity Notice of Termination and informing Carmel that he had not received any objection to a distribution from the provisional liquidator.  *Id.*,  Ex. 5 at 63.  Mr. O'Sullivan attached an email he had received from Mr. Katz dated January 20, 2010, that stated:

> I am not in funds to deal with paperwork or agreements on this matter and would suggest that you simply write to the escrow agents to advise them of the termination and to request release of the funds under the agreement.  At the same time I will write and advise of the provisional liquidation and my appointment in order that notices can be served at my office.
>
> Once the time periods set out in the agreement expire they [Carmel] should be free to release the funds to you [Mr. O'Sullivan] on behalf of your clients [Clarity].

*Id.* at 72.  The record contains no indication that Mr. Katz directly informed Carmel at that time of his appointment or authority.[4]

---

[4]  This May 2010 letter from Mr. O'Sullivan attached numerous previous communications, including a January 8, 2010, letter to him from Frank J. Carmel, of Carmel & Carmel, stating:

> We are ready to comply with the terms of the Escrow Agreement pursuant to which we are holding these funds, however, they require the joint instructions of both the purchaser (your client) and Turks, Ltd. . . . .
>
> We recognize the concerns of all parties that are involved due to whatever has happened with respect to this community in the Turks and Caicos, none of which has been adequately explained to us.  People are out a great deal of money . . . .

*Id.* at 71.  Notably, the reference to Turks, Ltd., was to the first escrow agreement but not the Agreement in contention here, to which Turks was not a signatory.

Mr. Katz was appointed Official Liquidator of Dellis by Order of the Turks & Caicos Supreme Court dated August 12, 2010. *Id.,* Ex. 4 at 51. That Order identified the powers of the Official Liquidator to include, but not be limited to, the following:

> (1) To locate, protect, secure, take possession of, collect, and get in all the property and assets of whatever nature to which [Dellis] is or appears to be entitled;
>
> . . .
>
> (3) To do all such things as may be necessary or expedient for the protection of [Dellis's] property or assets;
>
> (4) To investigate the affairs of [Dellis] so far as it is necessary to locate, protect, secure, take possession of, collect, and get in the assets of [Dellis];
>
> (5) To enter into communications with any creditors and any debtors of the Company without further order or other approval or formality;
>
> . . .
>
> (10) To make any compromise or arrangement with creditors or persons claiming to be creditors . . . ;
>
> . . .
>
> (18) To terminate, complete, or perfect any contracts or transactions relating to the business of [Dellis];
>
> . . .
>
> (20) To bring, defend, or intervene in any action or other legal proceedings in any jurisdiction in the name and on behalf of [Dellis] . . . ;
>
> . . .
>
> (22) To engage and retain and/or employ (whether within or without the jurisdiction) any attorneys, solicitors, counsel, lawyers, accountants, surveyors, property managers, and/or other qualified persons, to assist the Liquidator in the performance of his duties.

*Id*. In addition, the Order specified that "[n]o payment or other disposition of [Dellis's] property shall be made or effected without the direct or indirect authorization of the Liquidator." *Id.* ¶ 6. Mr. Katz has had authority, at least from and after August 10, 2010, to pursue, compromise, release or forego any Dellis claim to the Escrow Amount.

On November 12, 2010, Frank J. Carmel, Managing Shareholder of Carmel & Carmel, sent an email to Mr. Katz including a letter that described the firm's role as Escrow Agent, its need for confirmation of Mr. Katz's authority vis-a-vis Dellis, and its request for written instructions to Carmel to release the funds to Clarity. *Id.,* Ex. 4 at 48-50. Mr. Carmel indicated that "[u]pon verification and receipt, we will release such funds provided we are provided with a written release from both you and Clarity . . . and representing that no other claims can be made against the funds and release our Firm . . . ." *Id.* at 50. In response, Mr. Katz asked for "an analysis of the escrow fund" so that he could "verify that all payments due to be made to Dellis . . . have actually been made." *Id.* at 48. Mr. Carmel forwarded the requested information and again requested information confirming Mr. Katz's authority. *Id.* at 46-47. Mr. Katz sent a strange reply on December 5, 2010:

> I attach for your attention the exchanges which took place earlier this year with Tim O'Sullivan which are self explanatory.
>
> I am not in funds to become involved in formal proceedings in the US and have no interest in doing so. The contracts provide a mechanism for the release of the escrow funds following termination.
>
> Should the purchasers wish me to actively assist in this process I will need to be put in funds by them to cover my costs and the associated legal costs.

*Id.* at 46. It appears that the Liquidator was authorized by the court in Turks & Caicos to retain counsel, to participate in litigation, to "get in" all assets of Dellis, and to be paid therefore but refused to do so unless creditors first paid for his attention.

On June 16, 2010, New York counsel for Clarity sent a letter to Carmel demanding return of the Escrow Amount, based on its interpretation of the Escrow Agreement that Clarity was immediately entitled to the monies and that there was no uncertainty about the matter. *See* Ex. 5 at 59-61.

Litigation against Dellis in New York for alleged "massive fraud" was brought by other putative purchasers of Dellis-constructed real estate in Turks & Caicos in a suit filed on January 26, 2011. *See Connolly v. Kinay*, 11-CV-0606 (S.D.N.Y. Jan. 26, 2011). This suit has been transferred to Turks & Caicos to be addressed as part of the liquidation of Dellis and other related litigation in that country.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). Because the Court has considered the exhibits attached to Carmel's Motion to Dismiss, the Court will treat the motion as one for summary judgment.

### B. Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### C. Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 & 1335(a).  Venue is proper here because a substantial part of the events or omissions giving rise to the claims occurred here and the Defendants are aliens that can be sued in any district. *See* 28 U.S.C. § 1391(d).

### III. ANALYSIS

Carmel brought its Complaint for Interpleader on the basis of its "concern[] that there could be other claims against the escrowed funds, and absent the authorization by the Liquidator, and a release and indemnification by both Clarity and Dellis Construction," it could not release the funds "without incurring potential liability." Compl. ¶ 16.  Clarity answered that the obligation of the Escrow Agent to release the funds upon demand by one party, when the second party had notice but did not timely object, is plainly set forth in the Escrow Agreement, ¶ 1, and that Carmel owed it the entire Escrow Amount, without any diminution for attorney fees.

Counsel for the Official Liquidator has informed the Court that Mr. Katz needs more time to determine if Dellis has any claim to the Escrow Amount and that he could not release any possible claim at this time.

Mr. Katz has long-since waived any claim Dellis might have to the Escrow Amount. As a result, Clarity has the only remaining viable claim to the Escrow Amount. Further, Carmel has legitimately asserted uncertainty as to whether it could release the funds to Clarity without Dellis's agreement and still avoid a claim against the Firm. Accordingly, the Court concludes that Carmel is entitled to recover its costs and fees, although from whom and to what extent remains unresolved.

When the Court presented these conclusions to the parties at the hearing on November 18, 2011, Clarity and Carmel agreed that such conclusions were acceptable to them, without further litigation, leaving open for settlement efforts and/or briefing the amount of and responsibility for attorney fees. Counsel for Mr. Katz was only in a position to repeat his inability to take an affirmative or negative position on whether Dellis has any claim to the Escrow Amount.

**A.  Waiver by Mr. Katz**

The fundamental question here is whether, and the degree to which, Clarity and Dellis have a claim to the Escrow Amount. Dells has no claim to the funds because Mr. Katz repeatedly waived any claim he might have advanced vis-a-vis Clarity under the Escrow Agreement. First, on January 14, 2010, Mr. Katz agreed that the construction agreement (between Dellis and Clarity) was terminated but refused to either release Dellis' claim to the Escrow Amount or assert any claim to those funds. Mot. to Dismiss, Ex. 3 at 40. Second, on

January 20, 2010, Mr. Katz advised Mr. O'Sullivan that "[o]nce the time periods set out in the agreement expire they [Carmel & Carmel] should be free to release the funds to you [Mr. O'Sullivan] on behalf of your clients [Clarity]." *Id.,* Ex. 5 at 72. Third, on December 5, 2010, Mr. Katz adopted these prior statements and forwarded the emails to Mr. Carmel. *Id.,* Ex. 4 at 46. Mr. Katz refused to execute a release unless paid by the other parties but also failed to submit a claim to the Escrow Amount. *See id.*

The obviousness of Mr. Katz's waiver on this record, however, cannot be relied upon to ascribe knowledge to Carmel, which seems to have operated with a significant lack of formal information at critical times. Informed by Clarity of Mr. Katz's alleged authority and waiver, Carmel was late to hear from Mr. Katz himself. And, when Mr. Katz did respond to Carmel, he delayed in providing his authority to act on Dellis's behalf and would *not* assure Clarity that he might not advance a later claim, as, indeed, he has attempted to do before this Court. Given the litigation that has otherwise swirled around the collapse of Dellis and Turks and the uncertainty of acting in the face of Dellis's control by a foreign court in a liquidation setting, the Court finds that Mr. Katz's waivers as to a claim against Clarity, even when known tardily by Carmel, were insufficient to overcome the uncertainty felt by Carmel with respect to who should be entitled to the escrowed funds and in what amount. Given this legitimate uncertainty, Carmel cannot be said to have acted with "willful default or gross negligence" as required to hold it liable under the Escrow Agreement. Compl., Ex. 2 ¶ 4.

### B. Entitlement by Clarity

Clarity's beneficial owners, Robert and Lynne Grossman, put their money into escrow to protect it if the condominium project failed. The project went belly up almost immediately after they escrowed the money. Understandably, they want it back.

Inasmuch as Mr. Katz has waived any right of Dellis to receive a distribution from the Escrow Amount and there is no indication that the liquidation process in Turks & Caicos otherwise would prevent a distribution, the Court finds that Clarity has fulfilled the steps required under the Escrow Agreement. Therefore, Clarity is entitled to a distribution from the Escrow Amount.

### C. Fees to Carmel

Paragraph 4 of the Escrow Agreement provides that Carmel "shall not be liable in connection with the performance of any duties imposed upon [Carmel] by the provisions of this Esecrow Agreement, except for [Carmel's] own willful default and gross negligence" and that "all costs, expenses and losses, (including, without limitation, legal expenses and costs) incurred, expended or suffered by [Carmel] in connection with performing its duties hereunder and/or defending itself hereunder shall be paid by [Dellis] and [Clarity] equally." Compl., Ex. 2 ¶ 4. Further, Paragraph 4 provides that "[i]n the event that [Carmel] shall be uncertain as to [its] duties or rights hereunder . . . . [Carmel] shall be entitled to hold and disburse the Escrow Amount pursuant to paragraph 3 of this Escrow Agreement . . . ." *Id.* Paragraph 3 contemplated a possible interpleader action if the parties disagreed on distribution, "the costs thereof to be borne by the party that is not entitled to the Escrow Amount." *Id.* ¶ 3. Paragraph 6 of the Escrow Agreement also speaks to the issue:

> Other than for [Carmel's] willful default or gross negligence, [Dellis] and [Clarity] hereby agree to jointly and severally indemnify and hold [Carmel] harmless from any damage, cost, liability or expense (including, but not limited to, reasonable legal fees either paid to retained attorneys or representing the fair value of legal services rendered by [Carmel]) which [Carmel] may incur by reason of its acting hereunder without prejudice to any right either party may have to recover from the other party for such damage, cost, liability or expense.

*Id.* ¶ 6. Otherwise, notably, "[Carmel] shall serve without compensation." *Id.* ¶ 8.

The parties dispute which paragraph of the Escrow Agreement controls their dispute regarding attorney fees and costs. Clarity contends that Paragraph 3 is clear: Carmel filed an interpleader and the costs must be borne by Dellis because it is "not entitled to the Escrow Amount." *Id.* Carmel relies on Paragraph 6 to claim its reasonable legal fees jointly and severally from both Clarity and Dellis. Mr. Katz has not offered a position.

The parties' intention to cover costs and legal fees is clear, as is the differentiation between costs and legal fees in the Escrow Agreement. Because the parties suggested a settlement of the fee issue may be possible, however, the Court does not reach the issue of liability between Clarity and Dellis in this Opinion. Should such discussions fail, a schedule has already been set to allow it to be briefed.

## IV. CONCLUSION

The motion to dismiss Clarity's counterclaims [Dkt. # 9] will be granted. There is no basis for the conversion claim, as acknowledged by Clarity's counsel in court, and the Court finds that Carmel did not exhibit willful default or gross negligence in not distributing the Escrow Amount to Clarity prior to filing this interpleader. Upon resolution of the fee dispute, the

Court will issue a final opinion and order subject to appeal. A memorializing Order accompanies this Memorandum Opinion.


Date: December 2, 2011                              /s/
                                           ROSEMARY M. COLLYER
                                           United States District Judge